Ryan W. O'Donnell
VOLPE KOENIG
830 Bear Tavern Road, Suite 303
Ewing, NJ 08628
Phone: (609) 924-0109
E-mail: RODonnell@vklaw.com

*Attorney for Movant*
*TQ Delta, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                    Movant,<br><br>          v.<br><br>SAMSUNG ELECTRONICS<br>AMERICA, INC.<br><br>                    Respondent. | C.A. No. 21-_____ -<br><br>**TQ DELTA, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL SAMSUNG ELECTRONICS AMERICA, INC. TO COMPLY WITH SUBPOENAS**<br><br>**Motion Day: October 4, 2021**<br><br>**Oral Argument Requested** |

# **TABLE OF CONTENTS**

I.      BACKGROUND ...................................................................................1

II.     LEGAL STANDARD ...........................................................................6

III.    ARGUMENT.......................................................................................7

     A.  TQ Delta's Subpoena Are Reasonable And Do Not Impose Undue Burden ...............................................................................................8

     B.  SEA's Contention that the Operators/Defendants Possess the Requested Documents is Factually Inaccurate and does not Justify its Refusal to Comply with the Subpoenas .......................................11

     C.  SEA's Contention that it is Difficult to Search for the Requested Documents is not a Basis for Refusal to Comply with the Subpoenas...................................................................................14

     D.  SEA Should be Compelled to Appear for its Deposition after it Produces the Requested Documents ................................................17

III.    CONCLUSION..................................................................................18

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*,
    138 F.R.D. 438 (D.N.J. 1991) ......................................................................16

*Gerawan Farming v. Prima Bella Produce, Inc.*,
    2011 U.S. Dist. LEXIS (E.D. Cal. May 18, 2011) .........................................14

*Glass Egg Digital Media v. Gameloft, Inc.*,
    2019 U.S. Dist. LEXIS 149896 (N.D. Cal. Sept. 3, 2019)............................13

*Harris v. City of Philadelphia*,
    47 F.3d 1311 (3d Cir. 1995) ....................................................................14, 15

*In re Benicar (Olmesartan) Prods. Liab. Litig.*,
    2016 U.S. Dist. LEXIS 137839 (D.N.J. Oct. 4, 2016) ..................................16

*In re EthiCare Advisors, Inc.*,
    2020 U.S. Dist. LEXIS 144816 (D.N.J. Aug. 12, 2020) ............................6, 7

*In re Namenda Direct Purchaser Antitrust Litig.*,
    2017 U.S. Dist. LEXIS 139983 (S.D.N.Y. Aug. 30, 2017) ..........................16

*In re Novo Nordisk Sec. Litig.*,
    2021 U.S. Dist. LEXIS 66771 (D.N.J. Mar. 30, 2021) .................................15

*Lexpath Techs. Holdings, Inc. v. Welch*,
    2015 U.S. Dist. LEXIS 195899 (D.N.J. July 29, 2015) ................................14

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) .................................................................13

*Pacitti v. Macy's*,
    193 F.3d 766 (3d Cir. 1999) ...........................................................................6

6991547.1

*TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold*,
    2012 U.S. Dist. LEXIS 50102 (D.N.J. Apr. 10, 2012)....................................7

*Seven Z Enters. v. Giant Eagle, Inc.*,
    2020 U.S. Dist. LEXIS 246426 (W.D. Pa.13


*TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*,
    No. 15-cv-00611 (D. Del.)..............................................................................1

<u>Rules</u>

Fed. R. Civ. P. 26 ............................................................................................6
Fed. R. Civ. P. 34 ..........................................................................................16
Fed. R. Civ. P. 45 ...................................................................................*(passim)*

6991547.1

Pursuant to L.R. 7.1(d), TQ Delta, LLC ("TQ Delta") respectfully submits this Brief in support of its Motion to Compel Samsung Electronics America, Inc. ("SEA") to comply with the Rule 45 Subpoena to Produce Documents and Subpoena for Testimony that TQ Delta served on SEA in this District on July 28, 2021 (collectively, the "Subpoenas").  Copies of the Subpoenas are attached as Exhibits "A" and "B" hereto. As explained herein, SEA objected to providing any documents or appearing for a deposition in response to the Subpoenas and has refused to do the same.

## I.    BACKGROUND

TQ Delta's patented inventions and technologies are used in leading products and services worldwide. Relevant to this Motion, TQ Delta's patent portfolio covers technologies included in certain standard specifications issued by the Multimedia over Coax Alliance ("MoCA Specifications"). The MoCA Specifications are communications standards aimed at providing in-home media and data distribution over coaxial cable.

The Subpoenas are related to three combined Delaware civil actions captioned *TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*, No. 15-cv-00611; 612; 615 (D. Del.) (the "underlying litigations"), that have been consolidated for purposes of discovery. In the underlying litigations, TQ Delta claims that Comcast Cable Communications, LLC ("Comcast"), CoxCom, LLC ("Cox"), and Time

Warner Cable Inc. and Time Warner Cable Enterprises LLC ("TWC") (collectively "Defendants") infringe two TQ Delta patents, U.S. Patent Nos. 8,718,158 and 9,014,243 ("Patents-in-Suit") by, at least, using and/or selling products, systems, and methods that implement the MoCA Specifications.

The underlying litigations concern, in part, MoCA products supplied to Comcast, Cox, and TWC, by third-parties that are used by Comcast, Cox, and TWC and/or provided by Comcast, Cox, and TWC to its customers.  These products include SEA products ("Samsung MoCA Products") and products supplied by other non-parties ("Non-Samsung MoCA Products").  Comcast, Cox and TWC also infringe TQ Delta's patents by, *inter alia*, using the Samsung MoCA Products and Non-Samsung MoCA Products together in networks in order to provide services, e.g., broadband and television services, to customers. SEA is not a party to the underlying litigation and has never sought to intervene, despite the fact that the underlying litigations have been pending for over six years.

On July 28, 2021, TQ Delta served two Rule 45 Subpoenas on SEA, seeking documents and testimony relating to the Samsung MoCA Products. Prior to serving the Subpoenas on SEA, TQ Delta attempted to elicit the requested information from the Defendants in the underlying litigation. However, the Defendants' responses have been incomplete or inaccurate, and it is believed that the Defendants do not possess the requested technical information regarding the Samsung MoCA products.

Notably, the Defendants, Comcast, Cox, and TWC, recently noticed a Subpoena for the production of documents on SEA on September 3, 2021 ("Defendants' Subpoena") requesting similar documentation relating to the Samsung MoCA Products. See Ex. D at Request Nos. 1-3, 7, 8.  For example, Defendants' Subpoena requests:

> 2.   Documents sufficient to show all of the technologies, capabilities, and components necessary to provide extended Wi-Fi coverage utilizing MoCA with the Accused Samsung Products.
>
> 7. Documents and Things sufficient to show the steps, components, and/or equipment required to use the Accused Samsung Products to transmit or receive data using MoCA.
>
> 8. Documents and Things relating to the implementation of the MoCA bin scrambler and MoCA byte scrambler, as set forth in the MoCA 1.0, 1.1, and 2.0 Standards, including any reasons for such implementation.

Ex. D at p. 4-5 of Attachment A (Requests for Production of Documents). In addition, the identified "Accused Samsung Products" in Defendants' Subpoena overlap with the Samsung MoCA Products identified in TQ Delta's Subpoenas.  *Id.*

As customers of SEA for the Samsung MoCA Products, there would be no need to subpoena such information from SEA if the Defendants' were in possession of the requested information. It is believed that the only party that can provide this narrowly tailored technical information requested in the Subpoenas with any degree of certainty is SEA, as the entity that supplied and provided product support for the Samsung MoCA Products.

SEA served Objections to the Subpoenas on August 11, 2021 ("SEA's Objections"). Exhibit "C" hereto.  Following service of SEA's objections, the parties held two telephone conferences, on August 24, 2021 and September 2, 2021, in which counsel for the parties met and conferred regarding the Subpoenas.

During the August 24, 2021 conference, SEA summarized its objections as follows:

(1)   SEA alleged that the requested discovery period of July 2009-December 2020 is unreasonable;

(2)   SEA alleged that the named Defendants should be in possession of the requested information and that it is unreasonable to request such information from SEA;

(3)   SEA alleged that another Samsung entity, Samsung Electronics Co., Ltd. based in Korea ("Samsung Korea"), is in possession of at least some of the requested documents because Samsung Korea manufacturers the Samsung MoCA Products which SEA sells and provides support for within the U.S.; and

(4)   SEA alleged that even if SEA was in possession of the requested documents, it would be difficult to determine where the requested documents are maintained because SEA's set top box division no longer exists.

In a good faith effort to reduce any alleged burden on SEA, TQ Delta offered to narrow its requests for production as follows:

6991547.1

First, TQ Delta offered to limit the scope of "Samsung MoCA Products" to the specifically identified products set forth in Par. 25 of its Subpoena requesting the production of documents, Exhibit A hereto.  Second, TQ Delta requested that SEA produce the following, more specifically defined categories of documents relating to the Samsung MoCA Products:

1. **Technical Documents for the Samsung MoCA Products:** schematics, block diagrams, device specifications, parts lists, and operator/carrier user guides (e.g. guides describing how the operators/carrier provisions or configures or manages the Samsung MoCA Products).

2. **MoCA Chips for the Samsung MoCA Products:** documents sufficient to identify the chip/complete chipset (serial no., model no., MAC/PHY, etc.) that provides the MoCA functionality and the manufacturer of such chips/chipsets.

3. **Firmware Releases for the Samsung MoCA Products:** documents sufficient to identify the firmware release numbers for the Samsung MoCA products, as sold and as later updated, which likely can be obtained from the firmware release notes.

See Ex. E, Aug. 30, 3031 Letter.

A final meet and confer conference was held between counsel for TQ Delta and SEA on September 2, 2021 during which SEA repeated its objections and stated that it maintained its position that it would not produce documents in response to the Subpoenas.

The parties have been unable to reach an agreement. As discussed herein, TQ Delta submits that SEA's foregoing objections do not justify a failure to conduct a reasonable investigation for, and the production of, documents in response to TQ

6991547.1

Delta's Subpoenas which SEA should be in possession of or have access to as seller and support provider of the Samsung MoCA Products.

It is respectfully submitted that this minimal information should not impose any undue burden on SEA. As a seller and support provider of the Samsung MoCA Products in the U.S., it is believed that SEA either has the foregoing requested information or has access to the foregoing information. There is no valid explanation how SEA could sell and provide support for the Samsung MoCA products without this minimal, high-level technical information.

Because of impending discovery and infringement contention deadlines in the underlying litigation, TQ Delta is required to seek the Court's relief and submits this Motion to Compel SEA's compliance with the Subpoenas.

## II.    LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 45, a party has a general right to subpoena any person to produce relevant documents during the course of litigation." *In re EthiCare Advisors, Inc.*, No. 20-1886 (WJM), 2020 U.S. Dist. LEXIS 144816, *5 (D.N.J. Aug. 12, 2020). "The permissible scope of discovery under Rule 45 is the same as under Rule 26(b)." *Id.* (citation omitted). "It is 'well recognized that the federal rules allow broad and liberal discovery.'" *Id.* (quoting *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Rule 45(d)(2)(B) permits the service of written objections to a subpoena. The same rule expressly authorizes the filing of a motion to comply with a subpoena: "If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."

"The court has broad discretion regarding the enforcement of subpoenas." *TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold*, No. 11-7013(JLL), 2012 U.S. Dist. LEXIS 50102, *8 (D.N.J. Apr. 10, 2012). In assessing the reasonableness of a subpoena, the Court balances several factors:

> (1) the relevance; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by it; (5) the particularity with which the documents are described; (6) the burden imposed; and (7) the subpoena recipient's status as a nonparty to the litigation.

*In re EthiCare Advisors, Inc.*, 2020 U.S. Dist. LEXIS 144816 at **6-7.

## III. ARGUMENT

As described above, in a good faith effort to limit any burden on SEA, TQ Delta has attempted to narrow the scope of its Subpoena for the production of documents to the following three categories of information:

1. Technical Documents for the Samsung MoCA Products (Ex. A, Request Nos. 1-5).

2. Documents sufficient to identify the chip/complete chipset that provides the MoCA functionality for Samsung MoCA Products and the manufacturer of such chips/chipsets  (Ex. A, Request Nos. 3 and 9).

7

3. Documents sufficient to identify firmware releases related to MoCA functionality for the Samsung MoCA Products (Ex. A, Request Nos. 9-12).

SEA refuses and objects to producing any documents. For the reasons stated herein, SEA does not provide sufficient bases to refuse to search for and produce the requested documents in response to the Subpoenas.

## A.    TQ Delta's Subpoena Are Reasonable And Do Not Impose Undue Burden

SEA should be compelled to produce TQ Delta's requested documents because the Subpoena complies with Rule 45 and TQ Delta would be prejudiced if SEA does not produce the documents. Additionally, as set forth below, TQ Delta's Subpoenas are reasonable under the balance of factors considered by this Court.

### 1. *First Factor*: Relevance

The requested documents are relevant. The requested documents include schematics, block diagrams, device specifications, parts lists, operator/carrier user guides, documents identifying chips/chipsets, and documents identifying firmware release numbers that are relevant to the MoCA functionality of the Samsung MoCA Products. The Patents-in-Suit in the underlying litigation are directed to MoCA technologies included in the MoCA Specifications. These documents will confirm TQ Delta's belief that the alleged infringing set top box products (i.e., Samsung

MoCA Products) provided by SEA to the Defendants operate in accordance with the relevant MoCA standards and infringe TQ Delta's Patents-in-Suit.

## 2.   Second Factor: Need of the Party for the Documents

The requested documents are essential to this matter. As a seller and support provider of the Samsung MoCA Products in the U.S., it is believed that SEA has the foregoing information or has access to the foregoing information. TQ Delta has made reasonable efforts to obtain these documents from the named Defendants in discovery in this case; however, the Defendants have either not provided the responsive information or have provided incomplete or inaccurate information that can only be verified through SEA's records.

The need for this information is evidenced by the fact that the Defendants, Comcast, Cox, and TWC, recently noticed a subpoena for the production of documents on SEA on September 3, 2021. The Defendants' Subpoena requests similar documentation relating to the Samsung MoCA Products. See Ex. D at Request Nos. 1-3, 7, 8.  As a customers of SEA for the Samsung MoCA Products, there would be no need to subpoena such information from Samsung if the Defendants' were in possession of the requested information.

## 3.   Third Factor: Breadth of the Requested Documents

The documents requested are appropriately narrow. As previously described, through the meet and confer process, TQ Delta has made a good faith attempt to

narrow the scope of its requests to three specific categories of information relating to specifically identified Samsung MoCA Products. Moreover, these documents are believed to be high-level, commonplace documents that SEA possesses and uses/used in its normal course of business to provide product support. TQ Delta is not asking SEA to fish for obscure documents.

### 4.   Fourth Factor: Time Period Covered by the Requests

TQ Delta is seeking documents to cover the only time period of July 2009 through November 2020. Although infringement period is May 2014 to November 2020, the time period used for the request for documents appropriately begins in 2009 because the infringing set top boxes that were in use in 2014 could have been sold to Defendants by SEA at least as early as 2009. It is noted that the Defendants' Subpoena requests certain documentation relating to  the Samsung MoCA Products from SEA over an even longer period of time, from 2007-2020.  Ex. D at Requests 4, 5.  Thus, the more limited period of time in which TQ Delta is seeking documents is believed to accurately reflect the relevant time period and is less burdensome than the request made by the Defendants.

### 5.   Fifth Factor: Particularity of the Requests

The requests are described with particularity. Additionally, TQ Delta specifically narrowed the information and documents requested during its meet and confers with SEA. TQ Delta provided sufficient detail so that SEA's search for the

requested documents would not result in an overly broad or unduly burdensome search.

### 6. Sixth Factor: Burden Imposed by the Requests

The requests are not overly burdensome. TQ Delta requested particular higher-level, commonplace documents containing important information for the underlying litigations. There are 13 similarly situated third-parties that make set top boxes (SEA being one of them) that TQ Delta sought discovery from and of those 13 third-parties, 11 have produced responsive material through the course of discovery demonstrating the reasonableness of the TQ Delta's requests.

### 7. Seventh Factor: The Recipient's Status as a Non-Party

SEA is a non-party, but an important non-party as the entity sold and provided support for the Samsung MoCA Products accused of infringing the Patents-in-Suit. SEA is likely the only party that has accurate technical information that is relevant to TQ Delta's case-in-chief.

For the foregoing reasons, the Subpoenas should be enforced.

**B.     SEA's Contention that the Operators/Defendants Possess the Requested Documents is Factually Inaccurate and does not Justify its Refusal to Comply with the Subpoenas**

SEA contends that the operators, *i.e.* Defendants, are in possession of the requested documents. More specifically, SEA alleges the Defendants possess the Technical Documents for the Samsung MoCA Products and documents sufficient to

identify the chips/chipsets and Firmware releases that provide MoCA functionality for the Samsung MoCA Products, and therefore, SEA is not required to search for or produce the requested documents.

SEA's argument fails for at least the reason that the Defendants' Subpoena, noticed on September 3, 2021, requests similar documentation relating to the Samsung MoCA Products. See Ex. D at Request Nos. 1-3, 7, 8. As a customers of SEA for the Samsung MoCA Products, there would be no need to subpoena such information from Samsung if the Defendants' were in possession of the requested information. Cleary, the Defendants do not have the requested documents.

Notwithstanding, even if the named Defendants were in possession of some of the requested documents, it does not relieve Samsung of its duty to search for and produce the requested documents. With respect to the Technical Documents, SEA argues that the Samsung MoCA Products are made according to specifications/guidelines provided by the Defendants. Therefore, Samsung believes the Defendants are in possession of any relevant Technical Documents for the Samsung MoCA Products. However, TQ Delta is seeking documents relating to MoCA functionality with respect to the finished Samsung MoCA Products, and not just the initial requirements documents that the Defendants may have submitted to SEA. As the provider of the Samsung MoCA Products, it is believed that SEA is in possession of these documents. SEA also contends that the Defendants are in

6991547.1

possession of documents that identify firmware, driver, or software releases relating to MoCA functionality because the Defendants received the firmware releases from SEA. However, SEA is the party responsible for pushing out firmware releases, and would by the only party with accurate and complete information.

SEA cites *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) and *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 U.S. Dist. LEXIS 149896 (N.D. Cal. Sept. 3, 2019) to support its contention that the subpoena is improper because it seeks information that should be obtained from the parties – namely, Defendants. Ex. C at General Objection 2. The present matter is distinguishable from *Nidec* and *Glass Egg Digital Media* because the Defendants are not in possession of the vast majority of the discovery sought from SEA and the information Defendants did provide is incorrect and incomplete. Again, there would be no reason to issue the Defendants' Subpoena to SEA if the Defendants were in possession of such documentation. Samsung should be compelled to produce these documents which are not in Defendants possession. *See Seven Z Enters. v. Giant Eagle, Inc.*, No. 2:17:CV-740, 2020 U.S. Dist. LEXIS 246426, at *13 (W.D. Pa. Mar. 6, 2020) (denying motion to quash where significant portion of the information was in possession of the nonparty).

Moreover, information received from each Defendant has been contradictory or incorrect. For example, some of the Defendants provided version numbers for the

same product that have different numbers and formats. The requested SEA documents are needed to verify and correct the inconsistent and contradictory information Defendants provided. *See Lexpath Techs. Holdings, Inc. v. Welch*, No. 13-5379 (PGS) (LHG), 2015 U.S. Dist. LEXIS 195899, **11-12  (D.N.J. July 29, 2015) (determining defendants had right to verify information provided by plaintiff through non-party discovery); *Gerawan Farming v. Prima Bella Produce, Inc.*, No. 1:10-cv-00148 LJO JLT, 2011 U.S. Dist. LEXIS *9 (E.D. Cal. May 18, 2011) (determining non-party discovery was needed to verify information provided by a party).

### C.    SEA's Contention that it is Difficult to Search for the Requested Documents is not a Basis for Refusal to Comply with the Subpoenas

As previously stated, SEA asserts it may not be in possession of the requested documents because (1) Samsung Korea (the parent of SEA) makes the Samsung MoCA Products while SEA sells and supports the products, and (2) SEA's set top box division no longer exists. This argument is without merit.

Regardless of whether another Samsung entity manufacturers the Samsung MoCA Products or if a division no longer exists, it is not a sufficient basis to refuse to search for and produce the requested documents in response to the Subpoenas. Fed. R. Civ. P. 45; *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995) (a nonparty must take "reasonable steps to comply"). Rule 45 requires production of documents that is in the subpoenaed person's "possession, custody, or control." Fed.

R. Civ. P. 45(a)(1)(A)(iii). "For purposes of this rule, control has been found where a party has the legal right to obtain the documents on demand." *In re Novo Nordisk Sec. Litig.*, 2021 U.S. Dist. LEXIS 66771, *14-15 (D.N.J. Mar. 30, 2021). SEA does not assert that it does not have the legal right to obtain the documents requested. SEA's objection is based solely on speculation of what *may* not be in its possession. SEA must do more than rely on unsupported claims in order to take "reasonable steps to comply" with the subpoena. *Harris*, 47 F.3d at 1324.

As a seller and support provider for the Samsung MoCA Products, it is believed that SEA is in possession of or control of the requested documents. For example, the enclosed Power of Attorney was submitted to the FCC relating to at least one of the Samsung MoCA Products (SX022ANM) identified in the Subpoenas, and identified Samsung Electronics America, Inc. as the Applicant. See Ex. F (https://fccid.io/A3LSX022AN). It appears that at least some of the requested information, such as "Schematics," "Operational Description," "Parts List," and "Block Diagram," were confidentially submitted to the FCC and in SEA's possession.

Moreover, the parent-subsidiary relationship of SEA and Samsung Korea does not excuse SEA from searching and producing requested documents. *See* Fed. R. Civ. P. 45, Notes of Advisory Committee on 1991 Amendments ("The non-party witness is subject to the same scope of discovery under this rule as that person would

6991547.1

be as a party to whom a request is addressed pursuant to Rule 34."); *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441-44 (D.N.J. 1991) (wholly-owned subsidiary found to have control over parent corporation's documents because the subsidiary could obtain documents in the normal course of business and because both entities acted as one in the underlying transaction); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 U.S. Dist. LEXIS 139983, *23 (S.D.N.Y. Aug. 30, 2017) (compelling nonparty subsidiary to produce documents from foreign parent where the subsidiary was able to obtain documents from its parent corporation). SEA must still produce documents within its control. "Courts within the Third Circuit have broadly interpreted 'control' in the context of document production." *In re Benicar (Olmesartan) Prods. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016 U.S. Dist. LEXIS 137839, **216-17 (D.N.J. Oct. 4, 2016) (citation omitted). "Control is present for the purpose of document production when a party can obtain document production from the related entity to meet its business needs." *Id.* "A company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigation corporation's control." *Id.* at 217 (citation omitted). SEA sells the products Samsung Korea makes. This type of relationship requires interaction on a routine basis and strongly suggests SEA can obtain documents from Samsung Korea to meet its business needs. SEA is in control of the requested documents, and

the Court should compel SEA to search for and produce these documents. See *id.* (determining US company had control over related European company because US company could obtain the European company's documents in the normal course of their business).

TQ Delta believes that SEA is in possession of or control of the requested documents, and therefore, SEA should be compelled to search and produce the requested documents.

### D.     SEA Should be Compelled to Appear for its Deposition after it Produces the Requested Documents

SEA has refused to appear for a deposition based on the same objections it made to TQ Delta's requests for production.  See Ex. C at p. 2-3, 10-12.  To the extent that SEA is compelled to produce the documents requested herein, Samsung also requests that the Court order SEA to appear for its deposition with ten (10) days following its production of documents.

## IV.   CONCLUSION

For the foregoing reasons, TQ Delta respectfully requests that the Court grant its Motion to Compel and order SEA to fully respond to the Subpoenas within 7 days of the Court's order, and to appear for its deposition within ten (10) days after such production.

Respectfully Submitted,

Dated:  September 7, 2021          By: /s/ Ryan W. O'Donnell
                                   Ryan W. O'Donnell
                                   VOLPE KOEING
                                   830 Bear Tavern Road, Suite 303
                                   Ewing, NJ 08628
                                   Phone: (609) 924-0109
                                   E-mail: RODonnell@vklaw.com

                                   *Attorneys for Movant*
                                   *TQ Delta, LLC*

18

## CERTIFICATION PURSUANT TO L.R. 37.1

The undersigned counsel for movant, TQ Delta, LLC, hereby certifies that it conferred with counsel for Samsung Electronics America, Inc., Jordan Flournoy, on by telephone conferences on August 24, 2021 and September 2, 2021 in a good faith effort to resolve by agreement the issues raised by the Motion without the intervention of the Court and that the parties have been unable to reach agreement.

I certify under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Dated:  September 7, 2021          By: /s/ Ryan W. O'Donnell
                                       Ryan W. O'Donnell
                                       VOLPE KOEING
                                       830 Bear Tavern Road, Suite 303
                                       Ewing, NJ 08628
                                       Phone: (609) 924-0109
                                       E-mail: RODonnell@vklaw.com