UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TQ DELTA, LLC, | : | Civil Action No. 21-16580-SRC-AME |
| Movant, | : | OPINION |
| v. | : |  |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |  |
| Respondent. | : |  |

**ESPINOSA**, Magistrate Judge

Movant TQ Delta, LLC filed this action to compel compliance with two subpoenas it served on Respondent Samsung Electronics America, Inc. ("SEA"), a New Jersey-based company [ECF No. 1]. One subpoena, on which the dispute before the Court is primarily based, seeks documents in connection with three civil actions pending in the United States District Court for the District of Delaware and consolidated for discovery purposes (the "Delaware Action"). The second seeks production of a corporate designee to testify for SEA on topics related to the matters covered in the first. This Court held telephonic conferences to facilitate resolution of the motion to compel. Thereafter, SEA produced documents, narrowing the dispute.

The remaining dispute concerns TQ Delta's request that SEA locate and produce documents maintained by its foreign parent company and provide a sworn statement describing the scope of its search for material responsive to TQ Delta's document subpoena. [ECF No. 15]. The Court heard oral argument on December 17, 2021, and has considered the parties' written submissions. For the following reasons, TQ Delta's requests are denied, and its motion to compel compliance with its document and deposition subpoenas is dismissed as moot.

1

### I.  BACKGROUND

This motion to compel third-party discovery, under Federal Rule of Civil Procedure 45, arises out of the Delaware Action, in which TQ Delta asserts patent infringement claims against various cable provider defendants. In that litigation, TQ Delta alleges the cable provider defendants infringed two patents by using and/or selling products, systems, and methods that implement specifications issued by the Multimedia over Coax Alliance ("MoCA"), communications standards aimed at providing in-home media and data distribution over coaxial cable. SEA supplied some of the MoCA products used by the cable provider defendants and provided product support. Those Samsung MoCA products were manufactured and designed by a foreign-based Samsung entity and sold by SEA as part of its now-defunct cable set-top box business line. According to the record before the Court, SEA exited the set-top box business years ago, completely closing it in 2019.

The two subpoenas at issue here seek documents and testimony relating to the Samsung MoCA products. TQ Delta asserts it first attempted to obtain the requested information from the cable provider defendants in the Delaware Action and then issued the subpoenas on SEA only upon concluding that the responses provided by the cable provider defendants were incomplete. TQ Delta served SEA with the subpoenas on or about July 28, 2021. Following SEA's service of objections to the discovery demand, the parties engaged in meet and confer sessions to attempt to narrow the scope of the request but were unable to resolve their dispute.

TQ Delta filed this action on September 7, 2021, seeking an order compelling SEA to produce documents in three categories relating to the Samsung MoCA products: (1) technical documents, including schematics, block diagrams, device specifications, parts lists and operator/user guides; (2) the MoCA chips or chipset providing MoCA functionality; and (3)

firmware releases. Thereafter, SEA sought an extension of time to oppose or otherwise respond to the motion to compel, as it worked to locate and produce documents that might moot TQ Delta's motion. The Court found the production would likely narrow the issues in dispute, granted SEA's extension request, and directed SEA to file its response by October 4, 2021. On that date, prompted by SEA's request for another extension, the Court held a telephone conference to facilitate resolution of the parties' dispute. In light of the progress reported, including SEA's production of documents to TQ Delta, the Court ordered the motion to compel held in abeyance, set a schedule for TQ Delta to review SEA's production and identify any deficiencies, and directed the parties to continue to meet and confer to address any identified deficiencies and narrow the matters in dispute. The Court further directed that, at the conclusion of this meet and confer process, the parties file a joint letter setting forth any remaining disputes concerning SEA's response to the subpoenas. On October 25, 2021, the parties filed a joint letter.

In that letter, SEA reports it has produced a total of 1,254 documents, representing all potentially responsive documents located after an initial diligent search of its files and a follow-up investigation to address deficiencies raised by TQ Delta. TQ Delta contends that SEA's production is insufficient, that many of the documents produced are not responsive to its subpoena, and that SEA should continue to search based on its ability to access additional documents in the possession of Samsung Electronics Co., Ltd., the foreign parent company of SEA.

Thus, presently before the Court is TQ Delta's request for an order compelling SEA to make a reasonable inquiry with its parent company for three categories of technical documents consisting of the following: (1) testing information on the operability of the Samsung MoCA Products in connection with obtaining MoCA interoperability certificates; (2) operator guides

demonstrating the capability to remotely control the Samsung MoCA products after they have been deployed in a consumer customer's premises; and (3) information and datasheets concerning the chips and chipsets that provided MoCA functionality for the Samsung MoCA products. TQ Delta also requests that SEA be ordered to produce a certification that details the scope of its search and confirms SEA has no additional documents to produce in response to the subpoena. SEA, in opposition to these requests, argues it has conducted a thorough and diligent search of its files, has produced all documents in its possession, and has no obligation to search for documents maintained by another corporate entity, including its foreign parent company.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena on a third-party to obtain documents, testimony, and/or other information falling within the scope of permissible discovery under the federal rules. Fed. R. Civ. P. 45(c); *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021) ("The scope of discovery pursuant to Rule 45 is the same as Rule 26(b)."). The rules set broad but not unlimited parameters on discovery. *Novo Nordisk,* 530 F. Supp. 3d at 501 (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)); *Schick v. Cintas Corp.*, No. 17-7441, 2020 WL 1873004, at *3 (D.N.J. Apr. 15, 2020). A court has discretion to modify discovery requests and to deny otherwise appropriate discovery when the information sought is unreasonably cumulative or duplicative or is not proportional to the needs of the case, upon consideration of factors including burden and expense. *See* Fed. R. Civ. P. 26(b)(2)(C); *Novo Nordisk*, 530 F. Supp. 3d at 501; *Schick*, 2020 WL 1873004, at *3. This concern is especially important where discovery is sought by subpoena from third parties not involved in litigation. Rule 45 itself states that the party "responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Indeed, to further the goal of ensuring compliance while avoiding unfair prejudice to the party served with subpoena, a district court has broad discretion regarding subpoena enforcement. *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012). In addressing the reasonableness of a subpoena, the court may consider several factors, including:

> 1) relevance, 2) the need of the party for the documents, 3) the breadth of the document request, 4) the time period covered by it, 5) the particularity with which the documents are described, 6) the burden imposed, and 7) the subpoena recipient's status as a nonparty to the litigation.

*NovoNordisk*, 530 F. Supp. 3d at 501 (citing *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014)).

Here, the dispute concerns the reasonableness of TQ Delta's assertion that, to comply with its document subpoena, SEA is obligated to continue searching for technical records in the three categories identified above. TQ Delta maintains that because SEA is the U.S. entity that markets, sells, and provides design and technical support for the Samsung MoCA products, SEA has access to additional information from its parent company, in particular the technical documents still at issue. TQ Delta also argues that, even though some of the information, such as operator guides, may theoretically be obtainable from the cable provider defendants in the Delaware Action, the fact that those defendants also served a subpoena on SEA for similar information regarding the MoCA products demonstrates a need to pursue the material through third-party subpoena.

SEA objects to any further production of documents, arguing it has met its obligation to search for and produce responsive documents. The party responding to a subpoena has an obligation "to make reasonable efforts to locate responsive documents." *Novo Nordisk*, 530 F.

Supp. 3d at 505 (citing *Fendi Adele v. Filene's Basement, Inc.*, No. 06-244, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009)). SEA asserts it has met this standard by conducting a thorough and exhaustive search of its files, which resulted in a substantial production of documents. SEA details the efforts made to locate documents responsive to the subpoena. In the parties' October 25, 2021 joint letter to the Court, SEA asserts in-house counsel (1) identified the sole remaining employee at SEA whose former responsibilities involved the set-top box business concerning the Samsung MoCA products; (2) had multiple conversations with that employee to determine the location of potentially responsive documents; (3) performed multiple searches of voluminous network drives used by the now-defunct set-top box business; and (4) performed additional searches of two company-wide repositories. SEA further argues that it should not be compelled to make an inquiry of its foreign parent company for additional documents, as TQ Delta cannot demonstrate SEA "controls" those documents.

 Having considered the parties' respective arguments and reviewed the exhibits submitted with the October 25, 2021 letter, the Court finds that SEA has complied with its obligation to make reasonable efforts to locate documents and has satisfied TQ Delta's subpoena by producing the documents located in its searches. Moreover, insofar as TQ Delta contends SEA's subpoena response is deficient because SEA did not search for documents that may be in the possession of its parent company, TQ Delta's argument lacks merit.

 Under the federal rules, a party may obtain documents and other tangible items that "are in the possession, custody or control of" the subpoenaed party. Fed. R. Civ. P. 45(a)(1)(A)(iii). Indeed, it is well-established that, in the absence of control, the target of the subpoena has no duty to produce. *Novo Nordisk*, 530 F. Supp. 3d at 502; *see also Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988) ("In the absence of control by a litigating corporation over

documents in the physical possession of another corporation, the litigating corporation has no duty to produce."). Control means the "legal right to obtain the documents requested on demand." *Gerling*, 839 F.2d at 140; *Novo Nordisk*, 530 F. Supp. 3d at 502. The Third Circuit has noted that when applying the control test to a document demand directed to a corporate subsidiary for records in the possession of the parent company, "control has been found to exist where the 'alter ego' doctrine warranted piercing the corporate veil." *Gerling*, 839 F.2d at 140. As noted by the district court for the District of Delaware, in a decision on a subsidiary company's motion to quash a subpoena, application of the alter ego doctrine is rare, given that "the separate and distinct corporate identities of a parent and subsidiary are not readily disregarded." *Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005). Indeed, district courts within the Third Circuit "have declined to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents." *In re Novartis and Par Antitrust Litig.*, No. 19-mc-149, 2019 WL 5722055, at *7 (E.D. Pa. Nov. 5, 2019). The burden is on the party seeking discovery to establish the requisite control by the subpoenaed party over the documents sought. *Novo Nordisk*, 530 F. Supp. 3d at 502.

      Here, TQ Delta has essentially asked the Court to disregard SEA's separate corporate identity from its parent company and find that SEA's obligation to comply with the subpoena encompasses a search of its parent company's records. However, in *Gerling*, the Third Circuit set a high standard for establishing that a subsidiary has control over the records of its parent company, observing control may exist in the following situations: (1) the subsidiary is the "alter ego" of the parent company; or (2) the subsidiary was an agent of the parent in the transaction giving rise to the litigation. *Gerling*, 839 F.2d at 140. The Third Circuit held: "Where the

7

relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Id.* at 141. The Court also bears in mind that, as a non-party to the underlying Delaware Action, SEA must be afforded greater protection from discovery than a party directly involved in the litigation. *In re Centrix Fin., LLC*, No. 12-6471, 2012 WL 6625920, at *6 (D.N.J. Dec. 18, 2012). The Court applies these principles to the parties' arguments on this motion to compel.

TQ Delta maintains that SEA had access to the subject technical documents in its ordinary course of business because it provided technical support for the Samsung MoCA products manufactured and/or designed by the parent company. It also asserts that documents produced by SEA demonstrate it was involved in the MoCA products' design, further indicating access to the documents in the ordinary course of business. Citing *Camden Iron and Metal v. Marubeni America Corp.*, 138 F.R.D. 138 (D.N.J. 1991), TQ Delta argues that when a parent and subsidiary company work in tandem on the transaction underlying the litigation—in this case, according to TQ Delta, the development of the Samsung MoCA products and the set-top box business—the Court can conclude the subsidiary has the legal authority or ability to obtain documents in the parent's possession on demand.

In response, SEA has proffered evidence refuting the assertion that parent and subsidiary acted as essentially one entity concerning the Samsung MoCA products and set-top box business. The former senior director and general manager of SEA's cable set-top box business, Michael Smith, avers in his declaration that the Korean parent company Samsung Electronics Co. and its U.S. subsidiary SEA performed separate and distinct roles regarding the set-top boxes, which implemented the MoCA products. (Smith Decl. ¶ 6, ECF No. 15-4.) According to Smith,

8

Samsung Electronics Co. designed and manufactured the set-top-boxes, but SEA did not. (*Id.*) He asserts SEA handled U.S.-based sales, marketing, and support functions. (*Id.*) Particularly relevant to the discovery matter before the Court, Smith declares:

> SEC [Samsung Electronics Co.] and SEA maintained separate records, databases, and employees with respect to the STB [set-top box] business. SEC and SEA also maintain separate archives. SEA did not, and does not, have access to SEC's records for the STB business in the normal operation of SEA's business . . ..

(*Id.*)

Given the foregoing evidence, TQ Delta's reliance on *Camden Iron* is misplaced. Though *Camden Iron* did not involve subpoenaed discovery under Rule 45, the court evaluated a litigating party's discovery obligation under the similar Rule 34 standard of "possession, custody or control" and applied *Gerling* to compel the defendant subsidiary company to produce documents belonging to its non-party parent company. *Camden Iron*, 138 F.R.D. at 441-42. Key to the decision was the court's finding that the plaintiff had demonstrated the two companies had acted "as one" in the underlying transaction. *Id.* at 442-43. In reaching this conclusion, the *Camden Iron* court noted that the plaintiff had proffered unrefuted evidence that the defendant's parent company played a significant and active role in the transaction underlying the plaintiff's breach of contract claim, maintaining ultimate oversight and control over the subsidiary's involvement in the contract negotiations. *Id.* at 443. The court further found control had been established because the evidence demonstrated the defendant subsidiary had "easy and customary access to the [parent company] documents involving this transaction." *Id.* 443-44.

Here, in contrast, TQ Delta's assertions of such control by SEA over the records of its parent are largely unfounded. At best, TQ Delta has proffered that documents produced by SEA indicate that SEA collaborated, to some unknown degree, with Samsung Electronics Co. on the

9

MoCA products and set-top box business. However, that showing falls far short of the intertwined and indeed unified activity of the parent and subsidiary in *Camden Iron*. The facts of this case indicate SEA had a distinct function from its parent company with respect to the Samsung MoCA products. Even assuming they worked together, some modest level of collaboration or cooperation on a business venture between two companies, even where they are related corporate entities, is not tantamount to an alter ego or principal-agency relationship. Nor has TQ Delta demonstrated that SEA has, or had, the legal right or ability to obtain technical documents concerning the Samsung MoCA products from its parent company in the ordinary course of business, as the facts proffered by the plaintiff established in *Camden Iron*.[1] The evidence here fails to meet the Third Circuit's control threshold, as set forth in *Gerling*, so as to warrant compelling a subpoenaed party to produce documents in the possession of another.

The Court concludes TQ Delta has not carried its burden of establishing the requisite control by SEA over its parent company's records, particularly the technical documents related to the Samsung MoCA Products. Therefore, TQ Delta's request that SEA be compelled to inquire whether its parent company may have the technical documents in its possession is denied.[2]

---

[1] At oral argument, SEA's counsel represented that while searching for material responsive to TQ Delta's subpoena and, more specifically, responding to TQ Delta's concern that SEA's production lacked documents potentially available from Samsung Electronics Co., SEA did, in fact, request that its parent company search for the technical records, and that the parent company declined to do so. SEA asserts that its inability to obtain from its parent the technical documents sought by TQ Delta demonstrates its lack of control over that and other related material.

[2] Moreover, the Court notes that, according to the record, the technical documents sought by TQ Delta may be in the possession of the cable provider defendants, who are parties to the underlying Delaware Action. It is not clear to the Court to what extent, if any, TQ Delta has pursued the discovery from the Delaware Action defendants. Exhausting this source of information is consistent with a party's obligation to minimize the burden on a third-party associated with its compliance with a subpoena. *See In re Centrix*, 2012 WL 6625920, at *6; *see also Gould v. O'Neal*, No. 17-100, 2019 WL 4686991, at *4 (D.N.J. Sept. 26, 2019) (noting that, concerning a subpoena's reasonableness, "an undue burden is often created where the material sought from a nonparty is easily available from a party.").

The Court also denies TQ Delta's additional request for an order compelling SEA to provide a sworn statement detailing its search efforts and confirming no additional documents are available. Such a statement is unnecessary and cumulative, in light of the effect of counsel's signature on discovery responses, as set forth in Rule 26. Rule 26, which applies with equal force to third-party discovery sought under Rule 45, provides that "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. 26(g)(1). It further provides, that by signing, an attorney certifies a disclosure is complete and correct as of the time made and a discovery response is consistent with the rules. *Id.* In the Court's view, the signature of the attorney responding to a subpoena, here SEA, is generally sufficient to confirm the response is, to the best of the individual's knowledge, complete, accurate, and compliant with the party's discovery obligations under the Federal Rules of Civil Procedure.

As discussed above, SEA has made a substantial production in response to TQ Delta's document subpoena and has fulfilled its obligation to conduct a reasonable search for responsive documents. SEA has, therefore, complied with the document subpoena. With respect to the deposition subpoena, also at issue in TQ Delta's motion to compel, counsel for TQ Delta represented at oral argument that if no further production of documents was ordered by the Court, TQ Delta would withdraw the subpoena. Based on this representation, the Court deems the deposition subpoena withdrawn.

### III.  CONCLUSION

For the foregoing reasons, to the extent the application before the Court seeks an order directing SEA to attempt to obtain potentially responsive documents under the possession, custody, or control of its foreign parent company, the application is denied. Further, the Court

will not require any additional certifications, beyond the Smith Declaration and the signed representations by counsel for SEA, to satisfy SEA's obligation to certify the completeness of the production, as required by Rule 26.

Because the record indicates SEA has discharged its obligation to respond to the document subpoena served by TQ Delta, and because TQ Delta has withdrawn the deposition subpoena, TQ Delta's motion to compel compliance with the subpoenas is moot. The motion will accordingly be dismissed, and the action will be closed. An appropriate order will be filed.

                                                        /s/ *André M. Espinosa*
                                                 ANDRÉ M. ESPINOSA, U.S.M.J.

Dated: December 20, 2021